## WINSTON v. MOSELEY.

1. A plaintiff cannot, after examining a witness introduced by himself, propound questions to him, tending to shew him to be incompetent, or unworthy of credit.
2. Nor can he examine other witnesses to prove him incompetent, or to impeach his credit.
3. But he may introduce other witnesses to establish the facts of his cause, though they contradict what his previous witness deposed.
4. There being three issues, and a verdict for the defendant, some of the jury disagreeing as to one issue, the verdict is nevertheless sufficient to authorize a judgment for the defendant.
5. A cotton receipt, assigned by the payee before it is due, is not subject in the hands of an innocent indorsee without notice, to a set off existing against the payee.
6. Cotton receipts, by our statutes, are placed on the same footing, as to negotiability, with inland bills of exchange.

This was an action of assumpsit, brought by J. J. Winston against W. F. Moseley, in Lawrence Circuit Court, in March, 1823, to recover on a cotton receipt, given to W. Pettus, by the defendant, who was a ginner of cotton, on the 10th of December, 1821; whereby he acknowledged to have received of Pettus 60,000 pounds of cotton in the seed, to be picked, baled and delivered to Pettus for one twentieth; Pettus providing the materials for baling. This receipt was on the day of its date, assigned by Pettus to the plaintiff.

The defendant pleaded: 1. That he did not execute the receipt; which was verified on oath.  2. That the cotton was all delivered to Pettus, before notice of the assignment. 3. As a set off, that Pettus, at the time of the commencement of the action, was indebted to the defendant in the sum of $250, by a note made by Pettus to the defendant, the 20th December, 1820, and payable in cotton of the crop of 1821; and further by an agreement made between Pettus and one William Moseley, dated the 17th November, 1821, whereby Pettus promised to pay $1329,66, in cotton, to be delivered at the gin of the defendant; and which on the 26th of December, 1821, and before notice of the transfer of the cotton receipt sued on, had been by William Moseley, assigned to W. F. Moseley, the defendant. The issues were tried at March term 1827, when the jury found a verdict for the defendant, and "*some of the jury*" also said, that "the receipt on which the action was brought, was genuine." Thereupon the Court rendered judgment for the defendant.

18

JULY 1829.

Winston
v.
Moseley.

By a bill of exceptions tendered by Winston, it appeared that the plaintiff introduced as a witness, William Moseley, who deposed, that on the 26th December, 1821, he transfered to W. F. Moseley, the defendant, the agreement made to him by Pettus, that the transfer was absolute, and for value received, and that he did not then know of the existence of, or transfer of the cotton receipt sued on by Winston. After he had been cross-examined, the plaintiff's counsel asked him if he was not bound by contract with the defendant, to release him from the whole or part of the consideration given for the transfer of the agreement, if it did not prove to be a sufficient set-off, or if he was not bound for part of the costs of the action, if the defence failed. The defendant objected to the witness answering those questions, and the Court sustained the objection.

Eppes, another witness, was then introduced by the plaintiff and examined as to facts going to contradict the evidence of the former witness, without objection, and was then requested by the plaintiff's counsel to relate all the conversations which had taken place between him and the witness Moseley, concerning the subject of controversy. This was also objected to by the defendant, and the objection was sustained.

The plaintiff's counsel requested the Court to instruct the jury, that the defendant was not entitled to either item of set off relied on, because there was no proof that the plaintiff had notice of them, at the time his receipt was transfered to him. But the Court refused that instruction, and charged the jury that the items of set off, so far as they were proved to exist before the defendant had notice of the transfer, were available against the plaintiff.

The matters of this bill of excceptions were assigned by Winston, the plaintiff in this Court, as error; and also, that the verdict not being given by the unanimous assent of twelve jurors, was irregular and void, not being responsive to the issue on the first plea, so that there was no basis for the judgment rendered.

KELLY and HUTCHISON, for the appellant.

COALTER, for the defendant. [a]

*a* 1 Starkie's Evid. 147. 3 Starkie's Evi. 1751. 3 Marshall 132. Grundy v. Jackson 3d Wharton's Dig 365. Laws of Ala. 66.

By JUDGE COLLIER. The opinion of this Court is asked upon the following questions of law, 1. Can a party be permitted to shew the incompetency of a witness

introduced and examined by himself, by a question propounded to that witness? 2. Can he shew the incompetency of such witness, by the examination. of other witnesses? 3. Is a verdict in these words: "they (the jury) say that they find a verdict for the defendant; and some of the jury also say, that the receipt on which the action is brought, is genuine," a sufficient warrant for a judgment in favor of the defendant, where there is one plea among others, putting in issue the execution of the writing sued on? 4. Are the securities called by our law "cotton receipts," so far negotiable as in. an action brought on one by an indorsee, before due, to prevent a demand acquired by the maker, against the payee, previous to notice of assignment, from being made the subject of a set-off?

It is understood to be a well settled principle of law; that a party cannot discredit the testimony of his own witness, or shew his incompetency, [a] and the reason of it is this, because it would be unfair that he should have the benefit of the testimony if favorable, and be able to reject it if the contrary. [b] It can avail the plaintiff nothing to say, that the answer to the question proposed by him, though its obvious tendency was to shew the witness incompetent, was not designed to be used for that purpose, but that the object was to shew, that the witness had never made a transfer by which he parted with his interest in the security supposed to have been assigned by the witness to the defendant, and which he was attempting to set off to the action, and thereby to defeat that defence. It is immaterial what may have been the intention of the plaintiff, that is a circumstance which cannot be noticed; the Court can only look to the answer which a direct response to the question would elicit, and determine from thence of its admissibility.

If it were conceded that the Court erred in overruling the question proposed, because it impugned the competency of the witness, the objection to the examination was nevertheless sustainable, because an affirmative answer would have contradicted what he had before said, and thereby shewn him undeserving of credit.

In sustaining the opinion of the Court below on the first ground, this Court is not to be understood as extending the rule further than it has expressly laid it down; a party may, in some instances, shew facts variant from what his own witness has stated; where a witness by surprise gives testimony against the party who calls him, he may make

[a] 1 Starkie's. Ev. 147.

[b] Buller's N P. 297.

JULY 1829.

Winston
v.
Moseley.

*a* 1 Starkie
Ev. 147.

out his case by other witnesses.   When a party calls a witness, for the purpose of satisfying the formal proof required by the law, he may call other witnesses, who give contradictory testimony. *a*  The reasoning and authority upon the first point, are with equal force applicable to the second.

The verdict of the jury, is a sufficient authority for the judgment.  It is sufficiently certain, and shews that though some of the jury may have disbelieved the truth of the plea which put in issue the making of the cotton receipt, yet they were of opinion that the defendant had sustained by proof some or all of his other pleas; and if upon either issue, a verdict was found for the defendant, the plaintiff's cause of action is fully answered, and the judgment should have followed the verdict.   The true interpretation of the verdict is, that the jury found all the issues in favor of the defendant, but that which put in issue the execution of the cotton receipt; on that issue they expressed no opinion, as the verdict authorised a judgment for the defendant on the others.   The defendant therefore cannot be permitted to object to a reversal, because it is not shewn that the judgment on that issue is erroneous.

The fourth point claims from the Court, a consideration more full and minute.  It renders it necessary that the Court should declare by its decision the character of "*cotton receipts*;" whether they are to be esteemed as standing on equal ground, and regulated by the same principles that control the transfer of promissory notes, or whether they do not partake of the commercial character, and are therefore controlable by those rules of mercantile jurisprudence, which determine the nature and qualities of an inland bill of exchange.   To a solution of these questions, the legislative acts in relation to them, must be examined.   The first statute was passed in 1807, entitled "an act to render promissory notes and cotton receipts negotiable, and for other purposes. *a*

*a* Laws of Ala.
p. 66.

The first section of this act makes promissory notes negotiable as inland bills of exchange were.   The second section enacts, that cotton receipts shall be negotiable in the same manner as promissory notes are by the first.   These propositions will be found apparent from an inspection of the act without calling in aid any rule of construction.

It is now to be inquired, whether the second section of the act refered to, has been repealed. The first section of an act entitled, "an act concerning the assignment of bonds, notes, &c., and for other purposes," passed December 18, 1812, declares, "that all bonds, obligations, bills single, promissory notes, and all other writings, for the payment of money, or any other thing, shall and may be hereafter assigned by indorsement, &c;" and the same section gives to the obligor or maker, "the benefit of all payments, discounts and sets off, made, had or possessed against the same, previous to notice of the assignment." It is argued, that the second as well as the first section of the former act, is repealed by the provision here recited; that by the general expression "all other writings" is meant, cotton receipts, and every other security for the payment of money, or any other thing. If the statute of 1812, contained no other section than the one quoted, I should be prepared to yield to the justness of the argument. I know that a statute which deals in generalities, may repeal one, more particular in a description of the objects it provides for; but we are not permitted to decide the question by an application of that rule. There is a further provision in the act of 1812, which negatives the idea that the second section of the act of 1807, is repealed, and is considered as equivalent to an express declaration that that act is only repealed *pro tanto*, as it specifically relates to promissory notes. The section is as follows: "that an act entitled, 'an act to enable the assignees of bonds, bills, or notes, to bring actions for the recovery of the same, in their own name, and for other purposes;' and also such parts of an act entitled 'an act to render promissory notes and cotton receipts negotiable, and for other purposes,' as in any wise concerns promissory notes, be, and the same is hereby repealed."

The first section is a repeal by implication of the first and second sections of the act of 1807; the one just recited is an express repeal to the extent it professes, and according to the rules of construction, is viewed as paramount, and exercising a controlling influence over the former; the one repeals by construction, and that construction is predicated upon the fact of a repugnancy in the two enactments; the other is an express declaration by the legislature, how far the first act shall be in operation, and according to correct legal reasoning, is tantamount to a

declaration of the extent to which the act of 1807, is operative, and in force of meaning is equivalent to such an expression.   To present the idea in another form, the second section of the act of 1812, specially declares a repeal of the act of 1807, in part, and as it respects its other provisions, it is to be construed as if it had expressly continued, or excepted them from the influence of the first section, and the maxim of *expressio unius exclusio est alterius* restricts the control which that section by implication would be entitled to exercise over it, to the express declaration of the second.   Why have the legislature enacted this second section, unless it was intended to be effectual?   If it had been intended to repeal the act of 1807, so far as it related to the negotiability of the securities therein mentioned, this was done by the first section, because it was so far repugnant to that act, and being posterior in time, is paramount in authority.   It could not have been done with a view to retain the third section, which prescribes the time, when cotton receipts shall be due and payable, when there is no time expressed, or any other section of the act of 1807.   For these parts of that act do not conflict with the first section of the statute of 1812, and were not therefore abrogated by it.  It will not do to determine that it was a senseless act of the legislature; if it be susceptible of a meaning, the maxim *ut res magis valeat quam pereat* requires that the Court should give to it that meaning.

Again; the first section, by the employment of general language as has been shewn, would operate a repeal of the first and section of the act of 1807, if it was not explained by the second which is special, but this explanation being manifest, the maxim that "the law general must yield to the law special," is a sufficient authority to determine that the first statute is in force to the extent I have endeavored to prove.

In the construction of statutes, there are certain rules fixed by legal adjudication, which, when adhered to, enable all Courts, and at all times, to give to them the same interpretation, but when these rules are departed from, the imagination, untramelled by principle, is permitted to guide the judgment, there is no uniformity, no certainty in decision.   These rules, I understand as deserving equal deference and respect with other portions of the common law, and are supposed to be in the contemplation of the law giver, when he gives his assent to the enactment of a law;

hence the propriety of adhering to them, that the will of the legislature may be ascertained. In addition to the rules already considered, I will consider several others as applicable. In 6 Bacon, <sup>a</sup> it is said, "the most natural and genuine way of construing a statute is, to construe one part by another of the same statute: for this expresseth the meaning of the makers, and such construction *ex viscuibus actis*. The same author says in the same page, "where a law is plain and unambiguous, whether it be expressed in general or limited terms, the legislature should be intended to mean what they have plainly expressed, and consequently no room is left for construction. But if from a view of the whole law, or other laws *in pari materia*, the evident intention is different from the literal import of the words employed to express it in a particular part of the law, that intention should prevail, for that in fact is the will of the legislature."

The principles laid down in these quotations so fully and clearly express their own meaning, that they do not need the explanation and illustration of argument; by applying the reasoning employed, to the effect of the first and second sections of the act of 1812, considered separately and conjointly upon the act of 1807, the mind is drawn to the conclusion, that the negotiable quality of cotton receipts, imparted by the latter is not impaired by the former, and that the principles of commercial law, which give character to inland bills of exchange, must guide the opinion of the Court in determining upon the admissibility of the sets off offered by the defendant.

From the record it appears that the cotton receipt was assigned to the plaintiff, on the day on which it was made; that the defendant then had a note of the plaintiff's indorser, and afterwards, and before notice of assignment to the plaintiff, acquired another demand against him. It does not appear that the plaintff had notice, before the transfer to him of the cotton receipt, of the claim of the defendant to any set-off. According to mercantile law, the indorsee of a bill, indorsed before due, receives it on its own intrinsic credit: It is immaterial to him what may have been the state of accounts between his indorser and any of the other parties to it. If he is not cognisant of them, he takes it divested of all right of discount or set-off, which it was subject to in the hands of his indorser.

Cotton receipts, I have said, were governed by this rule; and the facts on the record, authorising its appli-

JULY 1829.

Winston
v.
Moseley.

cation, this Court are of opinion, that the Court below should have instructed the jury that the defendant's set-off was not allowable against the plaintiff. That Court having given instructions different from the law as declared here, the judgment is reversed and the cause remanded.

Judge SAFFOLD, dissenting.

Judges CRENSHAW and WHITE, not sitting.

NOTE.—This opinion was delivered after the cause had been retained by the Court, under an *advisare.*