# CRAGO v. STATE
## (No. 1010; Decided January 10, 1922; 202 Pac. 1099)

CRIMINAL LAW—WITNESSES—IMPEACHMENT—STATUTORY RAPE—EVI-
DENCE—CORROBORATION OF COMPLAINANT.

1. A party may interrogate his own witness with reference to previous statements made out of court inconsistent with his present testimony, for the purpose of refreshing his memory.

2. Contradictory statements made by a witness at other times out of court not in the presence or hearing of an adverse party nor under circumstances as to bind him, are but hearsay and where shown for the purpose of refreshing the memory or neutralizing the testimony of a witness, should not be received as substantive evidence of a fact.

3. Where under Comp. Stats. 5809, a party producing a witness, shows either by such witness or by other evidence that he has made statements out of court inconsistent with his present testimony, the jury should be cautioned that such previous statements must in no event be regarded as substantive evidence.

4. Evidence that a witness has made previous statements out of court contradictory or inconsistent with his present testimony, can only be used and regarded as neutralizing or counteracting the effect of his evidence given on the witness stand. and should not be received unless there be some prior evidence of a prejudicial or detrimental character to neutralize.

5. In a prosecution for rape, a witness for the state, upon being asked whether defendant had not made to him an admission of the crime on the following morning, answered that he did not remember, whereupon the prosecution over objection of defendant, was permitted to read into the record in the presence and hearing of the jury, an affidavit made by the witness prior to the trial, that defendant had made such an admission to him, held, error as evidence of a failure to remember was not evidence prejudicial or detrimental to the state that might be neutralized, hence the only effect of reading the affidavit in evidence would be to cause its contents which was hearsay, to appear to the jury as substantive evidence against accused, the highly prejudicial effect of which is clear.

ERROR to the District Court, Crook County; HON. E. C. RAYMOND, Judge.

Charles Crago was convicted of the crime of statutory rape and brings error. The material facts are stated in the opinion.

*Thomas A. Nicholas* and *Hayes & Heffron,* for plaintiff in error.

The court erred in permitting the prosecution to read an affidavit purporting to have been made by the witness Carney prior to the trial, out of court and not in the presence of defendant to the effect that he, the witness, witnessed the commission of the crime, and that defendant had admitted to the witness the commission thereof the following morning, Carney having failed to testify to suit the plaintiff, this affidavit was used for the purpose of his impeachment and as substantive evidence against defendant, which was highly prejudicial. The affidavit failed as a means of impeachment, since the witness had not given evidence detrimental to the state, the affidavit moreover was taken while the witness was in custody. The Wyoming statute is practically the enactment of the old common law procedure, and subject to the well settled distinction that alleged admissions communicated to third persons are hearsay and not substantive evidence of a fact. (Putman v. U. S. 162 U. S. 687.) The Horn case, 73 Pac. 716 and Arnold v. State, 40 Pac. 967 are not in point under the facts here. These cases dealt with contradictory statements coming as a surprise. Failure of witness to testify according to expectations does not justify an attempt to prove additional facts *ex parte.* (3 Jones Ev. 858; 1 Wharton 10th Ed. 484; People v. Jacobs, 49 Cal. 384; State v. Callaghan, 18 S. D. 148; People v. Rufford, 5 Demo. 112; Dunn v. Dunnaker, (87 Mo. 597.) The admission of the testimony of Ashdown, Justice of the Peace, was also erroneous for the foregoing reasons. The evidence was insufficient to sustain the verdict. The case stands on the uncorroborated testimony

of the prosecutrix. (State v. Connelly, 59 N. W. 479; Barnett v. State, 94 Ala. 30; Davis v. State, 120 Ga. 433; Conners v. State, 47 Wis. 523.) While the jury has a right to convict upon the uncorroborated testimony of prosecutrix in cases of this character, it is ordinarily improper to do so. (Tway v. State, 50 Pac. 188; Brown v. State, 106 N. W. 539.) The general rule is that defendant shall not be convicted without corroboration where the testimony of prosecutrix indicates unreliability. (33 Cyc. 1497; Morris v. State, 131 Pac. 735; Duino v. People, 28 Pac. 250; State v. Chapman, 88 Ia. 254; State v. Parnelly, 57 Minn. 482.) This case does not present the question of the weight of evidence nor of harmonizing conflicting testimony, nor of determining the credibility of witnesses. It is solely a question of the sufficiency of the testimony to justify a conviction, the evidence being so weak as to justify reversal. (Owens v. State, 35 Tex. 361.) The case follows clearly within the exception to the rule, holding the uncorroborated testimony of plaintiff restricted, and the judgment should be reversed.

*W. L. Walls,* for defendant in error.

The witness Carney when called to the stand, made an absolutely contrary statement regarding facts appurtenant to the case from what he had made on a prior date, consequently the state was entitled to, and in fact duty bound, to show that the witness had at a previous time, made statements contrary to the statements made at the trial. The state was taken at a disadvantage and by surprise. The admission of this impeached testimony was not error and in fact is provided for by Section 4540 Comp. Stats. 1910, now Section 5809 Comp. Stats. 1920. (Horn v. State, 12 Wyo. 136.) The jury was entitled to know the kind of man the witness Carney was. If the affidavit had been made under duress, defendant had a right to cross examine him and show the facts. It is probably true that the affidavit could not have been used against Carney were he on trial,

since it was taken while he was under arrest. The authorities cited by plaintiff in error will be found upon examination to relate to situations entirely unlike the present case. It is erroneously assumed by plaintiff in error that the introduction of the previous inconsistant statements of the witness Carney was the basis of the verdict returned by the jury. This is an erroneous assumption. The testimony of the witness Ashdown merely went to the fact of the making of the affidavit by Carney. The assignments with reference to the giving or refusing to give instructions seemed to have been abandoned by plaintiff in error. The evidence clearly established the commission of the offense charged, there being abundant corroboration of the testimony of the prosecutrix, and appellate courts will not disturb the verdict unless it is clearly against the weight of the evidence. (Phillips v. Territory, 1 Wyo. 82; People v. Loy, 10 Calif. 302; Cornish v. Territory, 3 Wyo. 95; Hansen v. Shelbourne, 25 Wyo. 445.) No substantial right of the plaintiff in error is shown by the record to have been evaded or disregarded, yet a fair and impartial trial by jury.

BLUME, Justice.

Defendant was convicted of rape on the person of Ida Leona Edwards, a female under the age of 18 years, and he has brought this case here on petition in error.

The defendant assigns as error the improper impeachment by the state of its own witness Carney. Ida Leona Edwards testified to driving with defendant, Carney, and May Donovan from Spearfish to the ranch of defendant near Sundance; that all of the parties went into the house at defendant's ranch, arriving at the latter place at night; that the lamp was lit but subsequently extinguished; that all four got onto one bed, Carney on one side, the defendant on the other, and the two women between, the prosecutrix being next to defendant. She was uncertain as to whether or not the witness Carney remained in the room all

the time or not. The witness Carney corroborated the prosecuting witness generally up to and including the point that the parties all got into one bed; he further stated that he went out at one time and was gone 15 or 20 minutes; that before he left the defendant was sitting on the edge of the bed, and he thought that this was true also when he returned. Up to this point his testimony had been favorable to the state, except, possibly, the statement that he did not, upon his return, see, on account of the darkness, what the defendant and the prosecuting witness were doing. Then Carney was asked as to whether or not he recalled an admission made by the defendant the next morning, to which the witness replied that he remembered none. Thereupon, an apparently animated and somewhat lengthly scene took place, the substance of which is that two questions were asked of the witness twice, namely, as to whether or not he had not made a prior statement in writing as follows: (1) "May came out doors while I was out, and Charles and Leona were on the bed when I went back in. They, Charles and Leona, were right in the act of having sexual intercourse"; (2) "I know they were having sexual intercourse and Charley told me that he had intercourse with her, when we were coming down town the next morning. He said he had no trouble in getting it." The witness answered to both of the questions that he did not remember making such statements, and he further denied that the statements were true. Thereupon, over objection, the statements so claimed to have been made were permitted to be introduced in evidence and read to the jury.

The state claims that proof of the making of these previous statements and the reading of them to the jury was authorized by Section 5809 of the statute, which, so far as pertinent here, reads as follows:

"The party producing a witness shall not be allowed to impeach his credit by evidence of bad character, but may contradict him by other evidence, and may also prove

that he has made, at other times, statements inconsistent with his present testimony.''

How far a party should be permitted to impeach his own witness has been the subject of many decisions. Its history is not uninteresting. While we have no exact information, it seems that under the Roman law a party could not generally impeach his own witness. That appears inferentially from Code Justinian 4, 20, 17, and 4, 20, 19. Aside from this, a custom had grown up, traceable at least to the middle of the second century of our era, but which perhaps was but a reversion to primitive type, with modifications, that where it was difficult or impossible for a party to prove his case, he might call upon the other party to prove his claim, or defense, by making his statement under oath. When this was done it was binding, and could not be contradicted. It is commonly called the ''decisory oath''. Just. 4, 6, 18; 4, 13, 4; Dig. 12, 2; Code Just. 4, 1; Paulus Sent. 2, 1. The reason for the finality of the oath was based on the great sanctity attached to the latter. If perjury was committed, no prosecution therefor followed, since God was considered a sufficient avenger thereof. Code, Just. 4, 1, 2; Dig. 12, 2, 1. Then, during the middle ages, was in vogue the system of compurgation, commonly, in England, called the wager of law, which, it seems, has been in existence among a number of races in different parts of the world. Under it a party, more frequently a person accused of crime, was permitted to prove his cause by taking an oath according to a prescribed formulary, supported by a certain number of compurgators, who testified to the verity of the oath taken by the party, and who, therefore, were, substantially, nothing but character witnesses. Pollock & Maitland 11, 600, 610, 633; Primitive and Anc. Leg. Inst. 11, 578, 629, 696; 1, 537, 539. These witnesses were either for or against a party; no thought occurred, or could occur, that a party calling them could contradict or impeach them. The party producing them vouched for them, and if they should re-

fuse to testify as desired, that was binding. Hence it is plain that the growth of the common law on this subject took its root in the idea that the party's witness could not be impeached by him. Nor, in view of the rule under the Roman law, was this idea changed after the study of that law commenced in England, in the latter part of the twelfth century. In fact, we have evidence that the so-called ''Decisory oath'' was in vogue, at least to some extent. (Pollock & Maitland 11, 636.) For several centuries after the twelfth, we seem to have no postive proof of the practice in regard to impeachment of one's own witnesses (Wigmore, Ev. § 896), but in 1681 in a trial for treason, when defendant attempted to discredit his witness, the Lord Chief Justice said (8 Howell State Trials 636) :

''Whatsoever witnesses you call, you call them as witnesses to testify the truth for you; and if you ask them any question, you must take what they have said as truth. Therefore you must not think to ask him any question, and afterward call another witness to disprove your own witness.''

The same thing was held in 1700 in the case of Adams v. Arnold, 12 Mod. 375, 90 Engl. Repr. 1064. In 1749 a party was not permitted to examine his witness to discover whether he had any interest in the case. (Plummer v. May, 1 Ves. Sr. 426.) The state seems to have been exempt from the rule (Wigmore, supra) but in the trial of Warren Hastings in 1788 the rule was laid down, in a case where a witness failed to remember certain facts, (Phillips E. 451) as follows:

''Where a witness produced and examined in a criminal proceeding by a prosecutor disclaims all knowledge of any matter so interrogated, it is not competent for such prosecutor to pursue such examination, by proposing a question containing the particulars of an answer supposed to have been made by such witness before a committee of the House of Commons, or in any other place, and by demanding of

him, whether the particulars so suggested, were not the answers he had so made."

In the trial of Crossfield, however, (26 Howells St. Tr. 37) tried in 1796, the prosecutor was permitted to examine him in order to refresh his recollection; and in Wright v. Beckett (1834) 1 M. & R. 414, the plaintiff was permitted to introduce evidence of contradictory statements where the witness had given prejudicial testimony against him. Other cases,. however, held the contrary and the controversy was not settled till the passage of an Act of Parliament in 1854.

The first case on this subject in this country was State v. Norris, 1 Haywood 429, arising in 1796, wherein the North Carolina court held that the state may prove contradictory statements of its witness. The doctrine was repudiated in that state in 1806 in the case of Sawrey v. Murrell, 3 N. C. 597; see also State v. Taylor, 88 N. C. 694. In De Sodry v. Laistre, 2 H. & J. 191, 219, arising in 1807, the Maryland court held similar to the first North Carolina case, but the same court subsequently held otherwise in Queen v. State (1821), 5 H. & J. 232 and Bank v. Navigation Co., (1839) 11 G. & J. 28, 36. In U. S. v. Jones, 3 Wash. C. C. 209, Fed. Cas. No. 15, 494, arising in 1813, the court held that no contradictory statements of such witness could be shown. In 1836 in the case of Elliott v. Pearl, 10 Pet. 412, 9 L. Ed. 475, the United States Supreme Court held likewise, and in Harris v. Berry (1847), Fed. Cas. No. 6115, it was held that examination of the witness himself as to former statements was error. In 1826 the subject arose in the appellate court of Massachusetts and it was held in Brown v. Bellows, 4 Pick. 178 that contradictory statements of one's own witness may be shown where a party is compelled to call that witness, but prior to the legislation on that subject, the authority to do so was limited to such case. Com. v. Starkweather, 10 Cush. 59 (1852). A similar rule was laid down in Maine; Dennett v. Dow (1840) 17 Me. 19. In Alabama, the subject came

up in Winston v. Morley, 2 Stewart 137, decided in 1829, wherein the court held that a party cannot discredit his own witness either by examining him as to prior contradictory statements, or by proving him favorably inclined toward the opposite party. But in 1853, the same court permitted the examination of the witness upon the subject for the purpose of refreshing his recollection. Campbell v. State (1853) 23 Ala. 44, 76. In Lawrence v. Barker, 5 Wendell 301, arising in New York in 1830, it was held that a party cannot impeach his own witness on a collateral fact. In People v. Safford, 5 Denio (N. Y.) 118 (1847) it was held error to permit the prosecuting attorney to bring out by an examination of his own witness testimony given before the grand jury contradictory of that given on the witness stand, and in Thompson v. Blanchard, 4 Comstock 311 (1850) it was held error to show such contradiction by another witness. In 1838 the Pennsylvania Court, in Stockton v. Demuth, 7 Watts. 39, 32, Am. Dec. 735, held likewise (obiter), and this ruling was confirmed in Smith v. Price (1839) 8 Watts. 447, although, it was held, this might be done where a party was compelled to call a witness. (Bank v. Davis, 6 Watts. & S. 285 (1843) ; Harden v. Hays, (1848) 9 Pa. 151.)

Thus the legal situation on this subject in the courts of the United States about the middle of last century was that no party was permitted to discredit his own witness by showing that the latter had made statements out of court inconsistent with the statements made at the trial, unless the witness was one whom the party was compelled to call, as, for instance, a witness to a will; but a party was, in some instances, permitted to examine his witnesses in regard to such inconsistent statements for the purpose of refreshing his recollection. Further than that the courts would not go. Then came the era of legislation, where laws were enacted in some of the states similar to Section 5809 of our statute, and, perhaps, mainly under the influence of such legislation, courts came to modify

their views, permitting generally examination of the witness for the purpose of refreshing his recollection, and also permitting, under certain conditions and with certain limitations, proof of previous statements made out of court. We have twice held that a party's own witness could be examined, calling his attention to former statements made, for the purpose of refreshing his recollection; namely, in Arnold v. State, 5 Wyo. 439, 40 Pac. 967, and Horn v. State, 12 Wyo. 80, 134; 73 Pac. 705, but we have not heretofore been called upon to decide whether the additional step could be taken of proving such former statements by other evidence. That is the question in this case. To this we now turn our attention.

The purpose of impeaching one's own witness is to neutralize his testimony on the witness stand. But neither courts nor legislatures have permitted this to be done by attacking the general character of a witness. This character is, generally at least, known to a party just as well before as during a trial, and courts will not tolerate that he, vouching for the good character of a witness when producing him, should play fast and loose, get the advantage of the testimony if favorable, but repudiate it if unfavorable. Section 5809 of our statute recognizes this principle. But there are times when a party may be imposed upon; he may be deceived and surprised by a witness; the witness may be allured away from him, and from the path of truth. It would be harsh and unjust that a party should be put at the mercy of such witness or of an unscrupulous adversary tampering with him. But the courts prior to the second half of the last century did not deem these facts of sufficient importance so as to lay aside the old established rule, and to meet this situation, and remedy the evils pointed out, the character of legislation mentioned was passed. In doing so, the legislatures did not intend that facts should be established by hearsay evidence. While under the statutes a party will be given protection from a deceitful and unscrupulous witness, still it must be

borne in mind that statements made out of court, not in the presence or hearing of an adverse party, and not made under such circumstances as to bind him, is but hearsay. Such statements should not, therefore, be used in such a manner as to make them substantive evidence of a fact. (Wigmore, Evidence, §§ 906, 1018.)  Herein lies a danger, and hence some courts have insisted that even when a witness is examined for the purpose of refreshing his recollection, or whenever contradictory statements are admissible in evidence, the court should instruct the jury that these previous statements made out of court, must in no event be regarded as substantive evidence in proving a fact. (State v. Merlo (Or.) 182 Pac. 153, 158; Sturgis v. State, 2 Okl. Crim. Rep. 362, 102 Pac. 57, 68; White v. State, 10 Tex. App. 395; State v. Steeves, 29 Or. 85, 43 Pac. 947; Welford v. State, 36 Crim. Rep. 419, 37 S. W. 761; State v. Reed, 49 La. Ann. 709, 21 So. 733; Bullard v. Pearsall, 53 N. Y. 230.)  Such statements, when shown either by the witness himself or by other proof, can, as before pointed out, only be used and regarded as neutralizing and counteracting the effect of the evidence given by the witness on the witness stand, so as to make that evidence as near as possible as though it had never been given.  That being its only function, there must, in order to permit them to be shown, be some prior evidence to neutralize.  Where a witness states no evidence against the party calling him, or where he gives only favorable testimony, there is nothing to counteract.  The testimony to be neutralized must, therefore, be prejudicial, detrimental; otherwise the previous statements shown would stand out before the jury not as offsetting some proof already given, but as substantive evidence of a fact, and to permit this to be done would be to turn to a dangerous purpose the beneficient intent of the legislation to which we have referred.  In the case of Sturgis v. State, 2 Okl. Crim. Rep. 362, 102 Pac. 57, the court said:

"The restrictions, above stated, upon the right of a party to impeach his own witness by showing contradictory statements made by such witness, are supported by the soundest reasons, and are based upon the highest considerations of public policy. If the state has the right, upon the plea of impeaching its own witness, to introduce statements made by such witness contradictory of his testimony given in court, and thus get hearsay before the jury, as original substantive evidence against a defendant, then in all fairness and justice we should be compelled to hold that the defendant had the same right. The far-reaching and ruinous consequences of such a rule are manifest. A defendant could place a witness upon the stand, and, after asking him a few general questions, could then ask the witness if he had not made a statement (giving the statement in full) to the defendant, and other persons, which would constitute a complete defense. Upon the denial of the witness that he had made such a statement, the defendant could then place the parties named upon the witness stand and prove that the first witness had made such statements. If a defendant could do as was permitted to be done by the state in this case, it would be impossible to secure a single conviction, and no one would be subject to the pains and penalties of perjury."

In Langford v. Jones, 18 Or. 307, 325, 22 Pac. 106, the court, after speaking of the fact that the evidence to be contradicted must be prejudicial, goes on to say:

"To allow a party, after calling him as a witness and failing to elicit from him any advantageous testimony, to prove that the witness at some other time and place had made statements favorable to the claim of the party, is a strange mode of securing proof. It would be a kind of evidence which I could not distinguish from hearsay. Counsel for appellant cited a number of authorities to show that such a course was not permissible; but I think that the bare statement of the proposition is a sufficient

refutation of its correctness. If it were proper, a case could be made out many times by proof of what third persons had said; it would only be necessary to call the persons as witnesses and attempt to show by them the substance of the matter embraced in the statements, and having failed in that, then to prove what such persons said at another time and place, when they were not under oath, and obtain the benefit of that as direct evidence of the fact, such a construction would enable parties to employ as a sword what was intended as a shield. Instead of availing themselves of the benefits of the statutory rule in order to avoid the effect of damaging testimony given against them by a witness called to prove a fact in their favor, they could make use of it for the direct purpose of establishing the fact. It is enough to say that the legislature never intended by said provision of the Code to adopt any such absurdity." (See to the same effect State v. Steeves, 29 Or. 85, 43 Pac. 947.)

And the Supreme Court of Kentucky, in Champ v. Comm., 2 Metc. 17, 25, 74 Am. Dec. 388, one of the earliest cases under a statute similar to ours, says:

"The obvious meaning of the rule is, that where a witness states a fact prejudicial to the party calling him, the latter may be allowed to show that such fact does not exist, by proving that the witness had made statements to others inconsistent with his present testimony. But a case like the present, where the witness does not state any fact prejudicial to the party calling him, but only fails to prove facts supposed to be beneficial to the party, is not within the reason or policy of the rule, and the witness cannot be contradicted in such case by evidence that he had previously stated the same facts to others. Such a practice would be a perversion and abuse of a rule which was intended to protect a litigant against the fraud or treachery of a witness whom he may have been induced to confide in, and would lead to consequences more injurious than the evils the rule was intended to remedy."

In Masourides v. State, 86 Nebr. 105, 125 N. W. 132, the witness had testified that she saw defendant take his hand from his pocket. She was asked whether she had not seen him take out his gun, which she denied. She was then asked whether she had not made such statement, and she answered that she saw defendant take his hand from his pocket as though he were taking a gun, but that she never saw the gun. The written statement appeared somewhat stronger, and it was introduced in evidence and read to the jury. This was held error, the court saying in part:

"All that the county attorney sought to do and all he had the right to do in the way of showing such discrepancy in the statements had been accomplished, and the introduction of the statement itself could add nothing to the proof of the fact. It did not and could not show which of the two was correct. The jury were fully advised of her testimony before them and of the statement upon that point in the writing. The state could, in reason or law, ask nothing more. There can be no doubt but that it was competent to refresh the memory of the witness by calling her attention to the written statement, assuming the variance to be of such materiality as to justify it, and thus attract her attention to the specific facts and by that means obtain her best recollection, and it could properly be read to her for that purpose, but to allow the whole instrument to be read to the jury and commented upon, as was allowable if admitted, could have no other effect than that of substantive evidence, hearsay though it might be, and thus destroy a constitutional right of the accused on trial."

We need not further quote from cases. The courts of California, Oregon, Indiana, Kentucky, Arkansas, Texas, where statutes similar to our § 5809 have been enacted, uniformly lay down the principles here mentioned. Other courts have reached the same conclusion independent of the statute. The cases have been collated in 42 L. R. A. (N. S.) 747-750, in Ann. Cas. 1914-B, 1131-1134, and in 82 A. S. R. 61, 62; and see particularly in addition to the fore-

.going cited cases State v. Merlo (Or.) 182 Pac. 153, State
v. Yee Gueng, 57 Or. 509, 112 Pac. 424; Doran v. State
(Ark.), 217 S. W. 485; People v. Mitchell, 94 Cal. 550, 29
Pac. 1106; People v. Creeks, 141 Cal. 529, 75 Pac. 101; In
re Kennedy, 104 Cal. 429, 431; 38 Pac 43; State v. Kite
(N. M.) 172 Pac. 419; Hull v. State, 93 Ind. 128; Wigmore,
Ev., 904 (8); Jones on Evidence, §855.

The rule is succintly stated in Briscoe v. State, supra, as
follows:

"It is a well settled rule that it is error to permit the
state to impeach her own witness, where such witness
simply fails to remember, or refuses to state facts, or fails
to make out the state's case. A mere failure to make proof
is no ground for impeaching a witness."

When the witness Carney in the case at bar stated that
he did not remember that the defendant made an admis-
sion of the crime on the next morning, he stated no fact
prejudicial or detrimental to the state; he simply failed
to prove a fact which the State wanted to show. The
failure to so remember was no evidence to be neutralized;
after attempted neutralization, that is, after the state-
ments were shown, the case would in legal effect stand
the same as it was before, namely, that he did not remem-
ber. Hence the only purpose that could be subserved by
reading into the record the previous statements made, and
the only effect that this could have, would be to cause these
statements, which were hearsay, to appear to the jury as
substantive evidence, the highly prejudicial effect of
which is clear. It was, therefore, error. The Supreme
Court of Michigan in Scripps v. Reilly, 38 Mich. 10, 15,
aptly said:

"Everything having a tendency to prejudice or influ-
ence a jury in their deliberations which is not legally ad-
missible in evidence on the trial of the cause, should be,
so far as possible, kept from coming to their knowledge
during the trial. An impression once made upon the mind
of a juror, no matter how, will have more or less influence

upon him when he retires to deliberate upon the verdict to be given, and no matter how honest or conscientious he may be, or how carefully he may have been instructed by the court to not permit such incompetent matters to influence him, or have any bearing in the case, it will be very difficult, if not impossible, for him to separate the competent from the incompetent, or to say to what extent his impressions or convictions may be attributed to that which properly should not have been permitted to come to his knowledge.''

Evidence of this kind under similar circumstances has been often rejected or held wrongly admitted because not prejudicial or detrimental to the party calling the witness. (Shackleford v. State (Tex. Crim.) 27 S. W. 8; Howe & Johnson v. Skidmore, 24 Ky. L. 2048, 72 S. W. 792; Williford v. State, 36 Tex. Crim. Rep. 139, 92 S. W. 1093; Willis v. State, 49 Tex. Crim. App. 139, 90 S. W. 1100; State v. Hite, supra; Champ v. Comm., Supra; see also cases in the notes to which we have referred.)

The witness, Carney, also denied having made a statement that the defendant and the prosecuting witness had sexual intercourse. He testified, as we have mentioned, that he was out of the room part of the time, which is consistent with the other evidence in the case. The room was dark, and since it had not been shown that the act of sexual intercourse was committed in Carney's presence, or while he was in the room and should have known it, it may at least be doubtful if the statement of Carney that he did not see what they were doing, or other evidence by him given on this point, was more than a mere denial of the fact that *he* had seen what defendant and prosecuting witness were doing, a fact not shown by other evidence, and therefore not detrimental to the state. But since the proof on this point may be different on another trial, we need not say more about it; and what we have said herein should be a sufficient guide to the lower court in the future proceedings herein.

The only other point argued in the case is that the evidence is not sufficient to sustain the verdict. But as the case must be remanded for another trial, we deem it improper to go into this question at this time.

For the error herein pointed out, the case is reversed and remanded to the district court for a new trial.

*Reversed and Remanded.*

POTTER, C. J., and KIMBALL, J., concur.