SHANNON, Judge.
The appellant was convicted in the lower court of driving while intoxicated and aggravated assault.' This appeal is from the conviction of aggravated assault.
The defendant and his wife were driving home around midnight after having been, for a period of several hours, drinking. They were stopped on the way home by Ivan Hart, a policeman, who, after having seen the defendant’s license, asked him to walk a straight line down the road and back for the purpose of deciding whether or not *78 he was capable of driving. The officer testified that he then put the defendant under arrest and proceeded to grab his arm. The defendant’s version of what happened next and the officer’s version of the same thing are quite different. The officer testified that he had hold of one of defendant’s arms and had his handcuffs out and was proceeding to apply them, at which time the defendant producd a knife and slashed him on the arm, after which, he says, he produced his blackjack and hit the defendant some four or five times. At some point in the struggle the officer received a very severe cut on his neck, which required him to have immediate medical assistance. According to the defendant when the officer was arresting him, he, the officer, took from his pocket and proceeded to use a blackjack whereupon defendant’s wife protested to the officer and, defendant also says, the officer then struck his wife with the blackjack and kicked her in the stomach, whereupon the defendant first produced and used his knife.
There were no actual witnesses to the initial scene of the occurrence although one witness saw the last portion of it. The State, putting on its testimony, used the officer, Ivan Hart, and on direct testimony he was asked the following question and made the following answer:
“Q. All right, sir, then what happened? A. Went to raking it up towards me and he told me he was going to let me have it. He was raking up my arm, which I still was holding on to this arm. I dropped my handcuffs and reached and got my blaclcjact (sic) and hit him cross the top of the head and the rest of the licks — Well, about the time I got my blackjack his wife come out of the car, went around us. I got my blackjack, hit him cross the top of the head, and I hit him on the shoulder and he cut me underneath here, and there were several scratches here (indicating) and he got a long gash across my arm.” (Emphasis added.)
And in cross-examination he was asked the following questions:
“A. I asked him to walk twice, I believe it was.
“Q. And when did you hit his wife with a blackjack?
“Mr. Tillis: I beg your pardon. Your Honor, I don’t believe anything came out on direct examination about anybody hitting his wife with a blackjack, and I object—
“The Court: Obj ection sustained.
“Q. Did you hit Mrs. Frost with a blackjack at the time of this arrest at this particular time and place that night when you was making this arrest?
“Mr. Tillis: At this time, Your Honor, I would like to have the prior question stricken and I again object to' the same question he’s just asked.
“The Court: Objection sustained.
“Q. Mr. Hart, did you make an assault on Mrs. Frost at the time of making this arrest on Mr. Frost there that night?
“Mr. Tillis: Again, Your Honor, I obj ect to that question, the same identical—
“The Court: Sustained, and counsel be instructed not to bring that in at this time on cross-examination. Mrs. Frost can testify if she wishes.
“Q. Mr. Hart, was Mrs. Frost there at the time of his arrest? A. Yes sir.
“Q. And did she get out of the automobile and come around to where you and Mr. Frost was? A. Mr. Frost and I were scuffling when she got out of the automobile.
“Q. And did she ever come where you and Mr. Frost were? A. Frankly, I don’t know where she went to. We were hugged up together and she come out of the car. I glimpsed her coming out of the car past us.
*79 “Mr. Laird: If Yottr Honor please, based on this question I want to ask him one other question which I did not ask him.
“Q. Did you kick with your foot Mrs. Frost at this time you arrested Mr. Frost, at the time you stopped him?
“Mr. Tillis: I’m going to object to this—
“Mr. Laird: This case is based on the law of self defense and any assault that may have happened there at that time—
“Mr. Tillis: May it please the Court—
“The Court: Objection be sustained, and do not go into that stage any more. It is not proper at this stage of the trial. Mrs. Frost can testify to anything later on, if it is admissible, but we are confronted with that at this time with what happened to this man.
“Mr. Tillis: May I ask that that question be stricken?
“The Court: Yes sir, that question be stricken.”
The defendant has assigned in his first point on appeal the refusal of the trial court to allow him to cross-examine Ivan Hart in words as follows:
“Whether or not the trial court properly refused evidence of any alleged assault upon appellant’s wife and, further, any evidence as to alleged physical injuries suffered therefrom.”
The defendant’s theory was to effect that he used his knife in protection of his wife. The trial court, in its instructions to the jury, instructed them on the law applicable thereto. It will be noted that the witness on direct examination testified concerning the wife that:
“ * * * Well, about the time I got my blackjack his wife come out of the car, went around us. * * * ”
 The witness places his wife at the scene of the occurrence and we can see no reason why he could not have been asked: “Did you hit Mrs. Frost with a blackjack at the time of this arrest at this particular time and place that night when you was making this arrest?” As was said by Mr. Chief Justice Hobson in Coco v. State, Fla. 1953, 62 So.2d 892, 894:
“It is too well settled to need citation of authority that a fair and full cross-examination of a witness upon the subjects opened by the direct examination is an absolute right, as distinguished from a privilege, which must always be accorded to the person against whom the witness is called and this is particularly true in a criminal case such as this wherein the defendant is charged with the crime of murder in the first degree. For the sake of emphasis we make the observation that at the time of the proposed cross-examination appellant stood in jeopardy of being convicted of such capital offense. Cross-examination of a witness upon the subjects covered in his direct examination is an invaluable right and when it is denied to him it cannot be said that such ruling does not constitute harmful and fatal error. ⅜ * *»
The witness in his direct examination had remained silent on this particular phase of the case, but he had named the defendant’s wife as being present at the scene of the occurrence and the defense was, in his theory of the case, to lay the groundwork that the defendant had come to the defense of his wife, as was stated on page 895 in Coco v. State, supra:
“The rule which prohibits proof of defensive matter upon cross-examina *80 tion never applies where by such cross-examination the adverse party simply seeks to disprove, weaken, or modify the case against him which the witness himself has made.’ Resurrection Gold Min. Co. v. Fortune Gold Min. Co., 8 Cir., 129 F. 668, 676. See also Wendt v. Chicago, St. P., M. & O. Ry. Co., 4 S.D. 476, 484, 57 N.W. 226; Jackson v. Feather River & Gibsonville Water Co., 14 Cal. 19, 24.”
It is urged by the State that Mrs. Frost and the defendant testified extensively about the very things which he sought to elicit on the improper cross-examination of Officer Hart. This does not take care of the court sustaining the objection to his cross-examination. Either the defendant had or did not have the right to cross-examine the officer as to the point involved. If he had that right then the court’s refusal to allow him to ask the questions which have or could have a decided effect upon the mind of the jury. Quoting again from Coco v. State, supra, on page 895:
(4) It is stated in 58 Am.Jur., page 350, Section 629, and we quote with approval:
“ '* * * it is error for the trial court to refuse to permit the cross-examination of a witness to extend to all matters germane to the direct examination, for such a cross-examination is a matter of absolute right and is not a mere privilege. * * * if a question is within the scope of direct examination it is not objectionable on cross-examination because it tends to establish a defense to the action.’
“(5) It is further stated in the same work in Section 632, page 352:
“ * * when the direct examination opens a general subject, the cross-examination may go into any phase, and may not be restricted to mere parts which constitute a unity, or to the specific facts developed by the direct examination. Cross-examination should always be allowed relative to the details of an event or transaction a portion only of which has been testified to on direct examination. As has been stated, cross-examination is not confined to the identical details testified to in chief, but extends to its entire subject matter, and to all matters that may modify, supplement, contradict, rebut or make clearer the facts testified to in chief by the witness on cross-examination.’ ”
While several assignments of error are filed and the attorney for defendant has urged each of his points should necessitate reversal, we have dealt only with his first point and having decided the trial court was in error on this point, we deem it unnecessary to pass on these other points.
Reversed.
ALLEN, Acting Chief Judge, and DREW E. HARRIS, Associate Judge, concur.