178 So.2d 724 (1965)
Wille Frank JOHNSON, Appellant,
v.
STATE of Florida, Appellee.
No. 5716.
District Court of Appeal of Florida. Second District.
September 30, 1965.
*725 Blank & Davis, West Palm Beach, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and James T. Carlisle, Asst. Atty. Gen., Miami, for appellee.
WILLSON, J.H., Associate Judge.
Willie Frank Johnson was indicted for murder in the first degree. The jury found him guilty of murder in the second degree, and he has appealed from the consequent judgment, presenting five points for our consideration.
No proper predicate was laid in the record for appellant's first point. Nevertheless, since appellant was charged with a capital offense, we have considered it, as a matter of grace, and find that the things complained of are not such as to vitiate the verdict and judgment.
Appellant's second point might better have been stated as two separate points, *726 and we will so treat it. Shortly after the offense was committed, appellant was interrogated by the state's attorney, with respect thereto, and made numerous statements as to the part he had played in the homicide. On cross-examination, the state's attorney asked him if he had made certain of these statements. Without exception, appellant freely admitted that he had made them. In rebuttal, the state's attorney called the court reporter who had taken down and transcribed the interrogation, and, over the objection of appellant's counsel, the reporter was permitted to testify that the statements had been made.
An identical situation arose in Singleton v. State, 39 Fla. 520, 22 So. 876, where the defendant was charged with murder in the first degree. The Court said:
"It is not claimed that the evidence of the stenographer was immaterial or irrelevant, nor is it suggested to us that the defendant was harmed by its admission. It is very clear to us that no injury did result, or could have resulted, to the defendant, by the admission of this testimony. It was simply corroborative of defendant's own admission. So far as the state's case was concerned, it was cumulative evidence, and as such may have been superfluous; and it may have been irregular to admit it, inasmuch as the defendant had admitted everything which this testimony tended to prove; but it cannot be said that the testimony was irrelevant or immaterial to the issues. Its admission had no tendency to mislead the jury, nor to prejudice the defendant's case in the slightest degree. This being true, we cannot reverse the judgment, even if the court below admitted the testimony irregularly."
In the light of this decision, there was no error in admitting the challenged evidence.
Appellant, under his second point also questions an attempt by the state to impeach the witness, Lewis Harper. We will deal with this under appellant's third and fourth points, which involve the same witness and problem.
Lewis Harper was first called by the state as its witness, and thereafter he was called as a witness by the defendant. In cross-examination, the state's attorney attempted to lay a predicate for Harper's impeachment, and this was followed up, on rebuttal, with alleged impeaching testimony. Appellant challenges the right of the state to impeach Harper, the method used, and the sufficiency of the impeaching testimony.
Appellant maintains that Harper, having been called first by the state, and testified in its behalf, was its witness throughout the trial, and could not be impeached by the state when afterwards called as a witness by appellant. There are no cases from our jurisdiction that are directly in point, Hernandez v. State, 156 Fla. 356, 22 So.2d 781, and Adams v. State, 34 Fla. 185, 15 So. 905, being cases where the state attempted to impeach a witness it had called in chief on direct examination.
The history of the rule concerning the impeachment of one's own witness is summarized in Mr. Justice Blume's opinion in Crago v. State, 28 Wyo. 215, 202 P. 1099, and discussed and criticized in III Wigmore On Evidence, 383 et seq. It appears from these authorities that there was no comprehensive and well-settled rule on this subject in England on July 4, 1776. It seems probable, however, that a party could not impeach his own witness by evidence of general bad character. Neither could he contradict him by other evidence, nor prove that he had made prior contradictory statements, and so impeach him. While several courts hold that "impeachment" is not synonymous with "contradiction," Krull v. Arman, 110 Neb. 70, 192 N.W. 961, De Noyelles v. Delaware Ins. Co., 78 Misc. 649, 138 N.Y.S. 855, Lenz v. Public Service R. Co., 98 N.J.L. 849, 121 A. 741, Talley v. Richart, 353 Mo. 912, 185 S.W.2d 23, or not strictly synonymous, In re Adoption of Myers, 196 Tenn. 219, 265 S.W.2d 12, they are synonymous *727 in their usage by the bench and bar of this state, and by courts in other jurisdictions, and we so use them here.
The rule that one may not impeach his own witness has its most likely origin in trial by compurgation, or wager of law, in which the defendant or person accused was to make oath of his own innocence, and to produce a certain number of compurgators, to swear that they believed his oath. III Blackstone 342. It is logical enough to say that the party avouches for or guarantees the credibility of his "oath-helpers," but there is no apparent reason for saying that he avouches for or guarantees the credibility of his "fact-tellers." This rule has, however, become so deeply embedded in the law that a major operation will be required to remove it, and this the courts, no doubt, will leave to the legislative bodies.
While some of the earlier decisions in this country allowed the impeachment of one's own witness, note 4, III Wigmore On Evidence (3rd ed.), 404 et seq., and this included impeachment by the state of its witness, State v. Norris, 2 N.C. 429, 1 Am.Dec. 564, they were overruled at an early date. It may safely be said that the present common law rule in the United States forbids a party to impeach his own witness by general evidence of his bad character. Annotation 21 L.R.A. 418, et seq., where numerous cases are brought together.
The rule against impeaching one's own witness did not, according to the common law rule in this country, prohibit one from contradicting his own witness, in order to show the truth of the matter. Annotation 21 L.R.A. 420, et seq. The reason for this exception is that the party has been surprised or entrapped by the testimony of his witness. Annotation 21 L.R.A. 424, et seq. An identical rule was being established by the courts in England during the same period. III Wigmore On Evidence (3rd ed.) 385.
The American common law decisions are in conflict on the right of a party to prove that his witness has made prior inconsistent or contradictory statements. Annotation 21 L.R.A. 426, et seq. The majority forbade this, unless the party was surprised or entrapped by his witness. 6 Jones, Commentaries On Evidence (2d ed. Rev.) 4805; 1 Greenleaf, A Treatise On The Law Of Evidence, § 444. There is some authority to the effect that the admissibility of the prior inconsistent or contradictory statements must be left to the discretion of the Judge. 6 Jones, Commentaries On Evidence (2nd ed. Rev.) 4806.
The first reported case in this state, on the question under consideration, is Newton v. State, 21 Fla. 53, decided in 1884. It was held that "the credit of a witness (called by the state) may be impeached by proof that he has made statements out of court contrary to what he had testified at trial." This aligns us with what Greenleaf lays down as the majority rule. It was also held, on the authority of Greenleaf, that in order to lay the foundation for such impeachment, it is necessary first to ask the witness as to the time, place and person involved in such supposed contradiction.
In this case the court either overlooked or ignored the statute enacted by our legislature in 1861, which purports to prescribe the circumstances under which one may impeach his own witness, and the manner in which it shall be done. This statute, now Section 90.09, Fla. Stat., F.S.A., provides:
"A party producing a witness shall not be allowed to impeach his credit by general evidence of bad character, but he may, in case the witness prove adverse, contradict him by other evidence, or prove that he has made at other times a statement inconsistent with his present testimony; but before such last mentioned proof can be given, the circumstances of the supposed statement, sufficient to designate the particular *728 occasion, must be mentioned to the witness, and he must be asked whether or not he made such statement."
The prototype of this statute is St. 17 & 18 Vict. c. 125, § 22, enacted in 1854.[1] In Montgomery v. Knox, 23 Fla. 595, 3 So. 211, the court said that our statute "is little more than declaratory of the rule as it existed before," citing 1 Greenleaf on Evidence, § 444 and notes. It might well have said that the statute was identical with the majority American common law rule, for so it is. This being so, the statute should be interpreted in the light of that rule as it existed when the statute was enacted, Ellis v. Brown, Fla., 77 So.2d 845, and it is for this reason we have discussed it at length.
The principal question of interpretation of St. 17 & 18 Vic. c. 25, § 22 is as to the meaning of "adverse," and the decisions have vacillated between "hostile" and "unfavorable." Note 2, III Wigmore On Evidence, 402. In Adams v. State, supra, the Court adopted the latter meaning. It said: "The impeachment permitted by the statute is only in cases where the witness proves adverse to the party producing him. He must not only fail to give the beneficial evidence expected of him, but he must become adverse by giving evidence that is prejudicial to the cause of the party producing him." (Its emphasis.) While this was followed in Hernandez v. State, supra, there are three cases which seem to find a different meaning in "adverse."
In Bryan v. State, 45 Fla. 8, 34 So. 243, and Sylvester v. State, 46 Fla. 166, 35 So. 142, the Court seems to equate "adverse" with "hostile." In the first of these cases it said that the "demeanor" of the witness on the stand enters largely into the determination of whether he is adverse; and in the second case it used the word "hostile" in reference to the witness.
In the third case, Williams v. Dickenson, 28 Fla. 90, 9 So. 847, the Court said that "under this statute a large discretion has, necessarily, to be reposed in the trial judge, who has the witness before him, and is in a position to determine from his manner of testifying whether as a witness he stands indifferent or adverse to the party producing him." (Our emphasis.) This also appears to interpret "adverse" as meaning "hostile." Hernandez v. State, supra, is the last word spoken on the subject by the Supreme Court, and, in its light, we adopt the meaning of "adverse" as "giving evidence that is prejudicial to the party producing the witness." The reference to the "discretion" of the judge in Williams v. Dickenson, supra, sounds like an echo of the rule, followed by some American courts, to which we have previously referred, that the admissibility of the prior inconsistent or contradictory statement must be left to the discretion of the judge.
While our statute, unlike its English model, contains no language conferring any discretion upon the Court in allowing proof of prior inconsistent or contradictory statements, they are both based upon the premise that the right granted arises from the surprise or entrapment of the party by his witness. This was a prerequisite to the introduction of such statements under the common law, at least the American common law, and Adams v. State, supra, and Hernandez v. State, supra, make it clear that surprise or entrapment are still a prerequisite under our statute. The discretion vested in the judge is only to determine whether the party is surprised or entrapped by finding his witness "adverse," *729 which does not mean his demeanor or mental attitude toward the party, but whether he has given evidence that is prejudicial to the party. Annotation 74 A.L.R. 1063 et seq., where numerous cases on this point are assembled.
Harper's testimony in chief for the state was in no sense prejudicial to the state's case, but as a witness for appellant his testimony was prejudicial, in that he testified to the bad character of the decedent, and as to decedent's mistreatment of appellant in the past. It is clear that under our statute as well as the American common law rule on the subject that Harper had become adverse to the state.
The state's attempt to impeach Harper was not by showing prior inconsistent or contradictory statements on matters elicited by appellant's counsel on direct examination, but by prior inconsistent or contradictory statements on matters brought out by the state's attorney on cross-examination. With the exception of one inconsequential matter, which was not followed up, the things about which the state's attorney inquired were details of the event about which the witness testified in general terms, and matters which the state was entitled to prove in its case in chief.
On cross-examination a witness may properly be interrogated as to the details of an event about which he has testified in general terms. Woodward v. State, 33 Fla. 508, 15 So. 252; Williams v. State, 32 Fla. 315, 13 So. 834; Wallace v. State, 41 Fla. 547, 26 So. 713; Frost v. State, Fla.App., 104 So.2d 77; 98 C.J.S. Witnesses § 382, p. 143. Where it is sought to impeach a witness on the basis of testimony given on cross-examination, the testimony must, of course, be relevant and material. Lockwood v. State, Fla.App., 107 So.2d 770, and the test of relevancy and materiality is whether the cross-examining party could have, for any purpose other than impeachment, introduced evidence on the subject in chief. 3 Wharton's Criminal Evidence (12th ed.) 332, and cases cited in that work. On both scores the evidence brought out on Harper's cross-examination was proper.
We have been treating Harper as the state's witness even though the testimony involved was given by him when called by the appellant. He was not, strictly speaking, the state's witness when he had been called by and was testifying for the appellant. However, insofar as impeachment is concerned he stood in the same position as he would have as the state's witness, for, in the absence of statutory provisions, where A calls B as a witness, and then C, his opponent, calls him, A may not impeach B; the reason being that A by calling B has avouched for his credibility, and will not be allowed to impeach him. III Wigmore On Evidence, 425. This rule, as we have pointed out, was subject to the exception that A might impeach B, on the basis of prior inconsistent or contradictory statements, if he was surprised or entrapped by B's testimony. Our statute  90.09 Fla. Stat., F.S.A.  produces the same result. There was sufficient reason for the trial judge to find that Harper was an adverse witness, and had surprised the state.
Appellant questions the sufficiency of the evidence to sustain a verdict of murder in the second degree. The evidence was sufficient, in our opinion, to sustain a verdict of murder in the first degree. Appellant will not be heard to complain because the jury reduced his offense to a lesser degree of homicide.
The judgment is affirmed.
SMITH, Acting C.J., and ANDREWS, J., concur.
NOTES
[1] "A party producing a witness shall not be allowed to impeach his credit by general evidence of bad character, but he may in case the witness shall in the opinion of the judge prove adverse, contradict him by other evidence, or by leave of court prove that he has made at other times a statement inconsistent with his present testimony." Our statute, it will be noted, omits the emphasized portions.