## WILLIAMS, ET AL. v. YOCUM, ET AL.*

(No. 1391; January 31, 1928; 263 Pac. 607)

CORPORATIONS—FRAUD—APPEAL AND ERROR—FINDINGS ON CONFLICT-
ING EVIDENCE BINDING ON APPEAL—STATUTE OF FRAUDS AS RAISED
UNDER GENERAL DENIAL—EVIDENCE—WAIVER—OBJECTION TO ORAL
EVIDENCE AT TRIAL—WHEN INVOKED BY DEMURRER—INDEMNITY—
STAY BOND—WITNESSES—ACTION BY MINORITY STOCKHOLDERS OF
CORPORATION.

1.  Whether sale by majority of directors on dissolution of
    solvent corporation by resolution to one of their number
    is valid is to be tested by the fairness and good faith of
    the transaction and the absence of undue benefit or un-
    just advantage to the buyer or his fellow directors.

2.  One who alleges fraud must so clearly and distinctly prove
    it as to satisfy mind and conscience of its existence.

3.  The law will not impute fraud to any party when facts and
    circumstances out of which it arises are consistent with
    honesty and purity of intention.

4.  Where testimony is conflicting, finding of trial court should
    not be disturbed, unless it is clearly erroneous or against
    great weight of evidence.

5.  Where directors of corporation authorized by more than
    two-thirds of stockholders to wind up its affairs did not
    possess powers of trustees on dissolution within Comp.
    St. 1920, § 5441, but acted only pursuant to vote of
    stockholders, finding that sale of entire assets of corpora-
    tion to one of their number for price which netted stock-
    holders of stock of par value of $25 per share a price of
    $40 was not in fraud of minority stockholders held not
    against great weight of evidence, where purchaser of as-
    sets had a year prior to sale purchased stock in corpora-
    tion at only $30 per share, which was consented to by all
    stockholders.

6.  Where there is sufficient competent evidence to sustain
    finding in case tried by the court without a jury, admis-
    sion of incompetent evidence is not ordinarily ground for
    reversal.

7.  In suit by minority stockholders against directors of corporation for accounting for sale of corporation's assets, testimony of witnesses as to statements made by purchaser of assets to them several years after sale was completed and letters written several years thereafter to defendants was hearsay and inadmissible.

8.  In suit by minority stockholders of a corporation against directors for an accounting for sale of its assets, improper admission in evidence of letters from purchaser of assets to defendants written several years after transaction to contradict erroneously admitted evidence as to alleged statements made by purchaser after transaction is not ground for reversal.

9.  In action by minority stockholders of corporation against directors for accounting in sale of corporation's assets, testimony of witnesses as to statements of purchaser of assets made several years after sale transaction was not admissible to impeach his testimony given on deposition, where he testified he did not remember making statements.

*See Headnotes:  (1) 14a C. J. p. 1173 n. 17.  (2-5) 4 C. J. 885 n. 42; 14a C. J. p. 1173 n. 17; 27 C. J. p. 64 n. 92; p. 67 n. 15. (6) 4 C. J. p. 1000 n. 24.  (7) 22 C. J. p. 209 n. 77; p. 348 n. 27. (8, 9) 4 C. J. p. 971 n. 61; 40 Cyc. p. 2696 n. 16.

Appeal from District Court, Converse County; Harry P. Ilsley, Judge.

Action by Elizabeth P. Williams, as executrix of the estate of John T. Williams, deceased, and others, against John Yocum and others.  From a decree for defendants, plaintiffs appeal.

*Frank A. Kemp, Jr.,* and *M. A. Kline,* for appellants.

The action is for an accounting of corporate assets transferred to an individual and thereafter transferred to a new corporation in exchange for its shares of stock, plaintiffs claiming that they were not permitted to participate in a pro rata share of the value of the old corporation.  The legal principles applicable to the controversy as presented by a review of the pleadings, evidence, lack of evidence and

ruling thereon, we believe to be as follows. Where interested parties fail to testify, the presumption is that their testimony, if given, would have been injurious to their cause, 22 C. J. 121; Campbell v. Creighton (Colo.) 167 Pac. 975; Johnston v. McKenna (N. J.) 74 Atl. 287; Stirling v. Wagner, 4 Wyo. 5; The Santissima Trinidad, 5 L. Ed. 468; 39 Cyc. 294; Fletcher Corp. 5621. Defendants could not buy the trust property for themselves, or for a new corporation organized by them, Perry Trusts § 602; Credle v. Baugham, 136 A. S. R. 806; Co. v. Cotton Mill etc., 232 Fed. 421; Michoud v. Girod, 11 L. Ed. 1076; U. S. v. Carter, 217 U. S. 286; Robertson v. Chapman, 152 U. S. 673; Tyler v. Herring (Miss.) 19 A. S. R. 289; Webb v. Branner (Kan.) 52 Pac. 429; Langer v. Co. (N. D.) 186 N. W. 104; Godley v. Co. (N. Y.) 105 N. E. 818. Defendants should be required to account for the value of the good will of the business as a going concern, Moore v. Rawson (Mass.) 70 N. E. 64; Iman v. Inkster (Neb.) 134 N. W. 265; Rowell v. Rowell, 99 N. W. 473; Claycraft v. Assn. (Ky.) 77 S. W. 923; Mason v. Co., 33 L. Ed. 526, and for the full value of the assets of the old corporation, Lindemann v. Rusk (Wis.) 104 N. W. 119; Windmuller v. Co. (N. J.) 90 Atl. 249; Smith v. Stone (Wyo.) 128 Pac. 617.

*Hagens & Murane,* for respondents.

The old company was regularly dissolved, § 5439 C. S.; the transaction was by agreement and there was no misrepresentations or fraud in disposing of the assets, in forming the new corporation. A judgment based upon conflicting evidence will not be disturbed on appeal, Stahley Co. v. Beckstead, 27 Wyo. 173; Standard Oil Co. v. Sullivan (Wyo.) 237 Pac. 253. Evidence of fraud must be clear and satisfactory, Kahn v. Traders Co., 4 Wyo. 419; Patterson v. Co., 7 Wyo. 401. The duties of trustees, upon dissolution, are fixed by statute, § 5441 C. S. The court properly sustained objections to the declarations made after the transaction, Jones Evidence §§ 238-248; 11 Enc. Evidence, 412. Trustees cease to be such when purpose of trust is ac-

-complished, 2 Perry (6th ed.) 1496-1502. The order dis-solving the temporary injunction was a final order and appealable, Anderson v. Englehart, 18 Wyo. 196; Weaver v. Richardson (Wyo.) 132 Pac. 1148; 23 Cyc. 1224. The order was an adjudication, 15 R. C. L. § 429. The directors of the old corporation did not act as trustees until after the dissolution of the company. Cases cited by plaintiffs in error are not applicable on the facts. The old company was dissolved by action of more than two-thirds of its shareholders and was within the statute, Ch. 349 C. S. The sale of one corporation to a new corporation, whose offices are the same, will not vitiate the sale if it be in good faith, Marks v. Merrill Co., 203 Fed. 16; Ryan v. Williams, 100 Fed. 172; Watkins v. Bank (Kans.) 32 Pac. 914; Bowditch v. Co., 82 Atl. 1014; Green v. Bennett, 110 S. W. 108; Smith v. Stone, 21 Wyo. 62. Plaintiffs' case is barred by limitations, §§ 5566-5569 C. S.; 17 R. C. L. § 105; Smith v. Martin (Calif.) 67 Pac. 779; Stevens v. Reed, 60 N. Y. C. 726; Reed v. Brun, 157 Fed. 190 (8th Cir.); Boren v. Boren (Tex.) 85 S. W. 49; Griffith v. Co. (Wash.) 79 Pac. 314. The rule that limitations shall run from discovery of fraud, does not operate in favor of the party who might, with ordinary diligence, have made a prior discovery of the fraud, Wilson v. LeMoyne, 204 Fed. 726; Duphorne v. Moore (Kan.) 107 Pac. 791; Coad v. Dorsey (Neb.) 148 N. W. 155; Garbutt Co. v. Walker, 64 S. E. 698; Simmons v. Co. (Ia.) 154 N. W. 166. Trustees of a dissolved corporation become such by virtue of the law, in other words, constructive trustees, and the statute of limitations begins to run as soon as alleged wrongful acts are committed, Stianson v. Stianson (S. D.) 167 N. W. 237; Lammer v. Stoddard (N. Y.) 9 N. E. 328; Broder v. Conklin (Calif.) 53 Pac. 699.

RINER, Justice.

This was a suit for an accounting brought by the plaintiffs and appellants, hereinafter mentioned as the plaintiffs, against the defendant, and respondents, hereinafter desig-

nated as the defendants, in the District Court of Converse County.  A trial to the court resulted in a decree for the defendants, and by direct appeal the cause has been brought to this court for review.  Both the pleadings and the record in the case are somewhat voluminous.

The petition's allegations are substantially that the Douglas Mercantile Company, incorporated in 1902 under Wyoming law, possessed a capital stock of $50,000, divided into two thousand shares of $25 each, par value; that it was profitably engaged until about February 4, 1920, in a general merchandise and grocery business at Douglas, Wyoming; that the plaintiffs held 319 shares of stock in this company, and that defendants were also stockholders in and constituted the directorate thereof, the defendants Jenne and Yocum being respectively its president and treasurer until its dissolution; that on February 4, 1920, more than two-thirds of the stockholders of the company, after legal notice, adopted a resolution dissolving the company and granting its directors in effect the powers to settle up company affairs, as are detailed in sec. 5441, W. C. S. 1920; that notices of dissolution were given and published as required by law; that there came into the hands of the defendants, as trustees for the stockholders, company assets consisting of real estate and storage warehouse valued at $8,000, book accounts and accounts receivable valued at $45,000, bills receivable valued at $900, merchandise and stock in trade valued at $49,652.65, furniture etc. valued at $8,000, cash on hand and in bank $22,000, or a total value of $133,552.65.  It is also alleged that the good will of the company was, at dissolution, worth more than $10,-000; that on February 12, 1920, defendants sold and conveyed to W. J. Butler, one of their own number, all of the said assets except a note for $900, which sale was without consideration and not in good faith, it being understood that said Butler would incorporate a new company of similar name, transfer these assets to it and give all stockholders, other than the plaintiffs, proportionate interests in

such new company; that this arrangement was carried out; that after the stockholders' meeting aforesaid, the defendants falsely and fraudulently represented to the plaintiffs that W. J. Butler would purchase said assets for $80,000; that these assets were worth not more than that sum and that the money thus received would be proportionately divided among all the stockholders of the old company; that these representations resulted in inducing plaintiffs to accept $40 per share for their proportionate part of the assets of the dissolved company; that plaintiffs relied upon these representations and did not learn of their falsity until long afterwards; that said Butler himself never paid for the assets purchased by him, but that the transfer was a mere paper transfer through Butler to the new company, and payment was actually made to plaintiffs for their stock from the cash assets of the dissolved company at the rate of $40 per share; that the amounts so paid plaintiffs were much less than they should have received; that plaintiffs did not and had no opportunity to learn that there had been no bona fide sale of the company assets as required by law, until about February 15, 1922; that as statutory trustees, defendants should account to plaintiffs for more than $27.50 per share additional to the $40 per share already received.

W. J. Butler, though named in the petition as defendant, was never served with process, he being, at the time the petition was filed and ever since, a non-resident of the state. The other defendants filed an answer, setting up four separate defenses. The first of these, consisting of admissions and denials, in effect admits the sale of the assets of the Douglas Mercantile Company (herein designated as the old company) on February 12, 1920, to W. J. Butler, and the subsequent transfer thereof by Butler to a new corporation of similar name (herein designated as the new company) with a capital of $75,000, but denies that defendants took stock in the new company pursuant to a prior agreement, and declares the sale was made fairly, for the best price obtainable and in good faith. It also alleges that plaintiffs

were paid amounts in cash for their proportionate proceeds of the sale which represented full and just compensation for their shares of stock and a proper proportionate share of the actual sale of the assets of the old company. The second defense recites at length the various legal steps taken to accomplish the dissolution of the old company and reiterates the existence of good faith in the matter of the sale to Butler and due distribution of the proceeds thereafter to all of the stockholders in the old company, it being asserted that plaintiffs received the payments for their several shares of the assets sold, with full knowledge of all the facts. The *third defense, summarized, is* that immediately after the stockholders' meeting of February 4, 1920, already mentioned, the plaintiffs commenced a suit for an injunction to restrain the defendants from carrying out the provisions of the aforesaid resolution and selling the company's assets; that after hearing was had, an order was made denying plaintiffs relief in that suit and dissolving the temporary restraining order issued therein; and, as no appeal was ever taken from that order, the issues in the case at bar have become *res adjudicata.* The fourth defense alleges that plaintiffs' cause of action, being one for relief on the ground of fraud, arose more than four years before the commencement of this action and hence is barred by the statute.

Plaintiffs' reply put in issue the affirmative matter alleged in the answer, except that the various steps taken by the old company to dissolve are conceded, as is also the right of a two-thirds majority of said company-stockholders to dissolve it, and the consequent right of the directors of the corporation upon such dissolution to sell its assets, as provided by law.

With the issues thus made up, and upon the evidence presented upon trial, the court made a general finding in favor of the defendants, and, as already indicated, entered a decree, dismissing plaintiffs' petition and that they take nothing thereby. To undertake to review the evidence in detail.

would extend this opinion to an unwarranted length, and we shall only refer to it as may be necessary to make reasonably clear the points urged for a reversal of the decree.

From the record it appears that the Douglas Mercantile Company was incorporated under the laws of Wyoming with a capital stock of $50,000 and two thousand shares of the par value of $25 each. It was engaged in a general merchandising business over a period of many years, and seems to have paid, during the five or six years preceding its dissolution in 1920, annual dividends averaging around ten per cent, excepting, however, the last year. In 1919, with the advent of prohibition of the manufacture and sale of intoxicating liquor, it lost a considerable source of income, and that year it paid no dividend, though apparently it made a moderate profit. Under date of December 31, 1919, an annual statement was made up for the company, which was subsequently presented to an adjourned annual stockholders' meeting held on February 4, 1920. This statement showed, as resources: accounts receivable $31,139.43, bills receivable $850, merchandise $49,652.65, real estate $3,177.62, furniture and fixtures $2,757.41, and cash $7,374.59, or a total of $94,951.70. At a special meeting of the stockholders, also held on the date last mentioned, it was determined by a vote of more than two-thirds of the entire stock of the company to dissolve the corporation. Plaintiffs alone voted against this proposition and subsequently endeavored, by a suit for injunction in the District Court of Converse County, to prevent its consummation. In this they failed, the temporary injunction previously issued in the action being, on February 12, 1920, dissolved, and a permanent injunction denied. No appeal was ever taken from this final order of the court. Thereafter and on the same date, the Board of Directors of the company met and adopted a resolution accepting the offer of W. J. Butler, one of their own number, to purchase the entire assets of the company for $80,000 cash, net to the company, it being also recited that no higher and better bid for the

property had been made. The President and Secretary of the corporation were authorized, upon payment of the purchase price, to execute proper instruments of transfer of all of the company's property to Butler. With Mr. Butler's bid of $80,000, he deposited a certified check for $20,000 and also a receipt for $19,800—this last amount representing the claim he had upon the proceeds of the sale in consequence of his ownership in the old company of 495 shares of its capital stock. Under the sale as consummated, each of the stockholders were entitled to receive $40 per share. Upon receipt of these payments, the officers of the company transferred, by proper instruments, under date of February 12, 1920, all of the assets of the Douglas Mercantile Company to Butler. Under date of March 8, 1920, the plaintiffs were paid for their proportionate share of the proceeds of the sale by checks, each endorsed "Dissolution dividend in full" and totalling $12,760. $200 was also paid to the administrator of the estate of one Packer, which held five shares. These checks were signed "The Douglas Mercantile Company, By John Yocum, Treasurer." The money placed in the bank to meet these checks was turned over by Butler to Yocum, and by the latter placed in a special account. No other cash payments to the stockholders were made. Butler continued for several weeks to transact business under the name and style of the Douglas Mercantile Company, using its books and banking facilities for that purpose. Thereafter, Butler went to the stockholders of the company, other than the plaintiffs, and entered into an agreement with them whereby a new corporation was to be formed with the same name as the old company, with a capital stock of $75,000 and shares of $100 par value each. It was agreed that each of said stockholders, other than the plaintiffs, would deliver to Butler a receipt in full for their claims upon the proceeds of the sale of the old company, and said stockholders should receive proportionate shares of stock in the new company. This plan was carried out, and, under date of April 12, 1920, Butler transferred to the new

company all the property previously conveyed to him by the officers of the old company.

The principal contention of plaintiffs, and upon which the disposition of the case really turns, is that the transaction which we have briefly outlined, was a sale by the defendants to themselves; that, being trustees, as a matter of law they could not buy the corporate property, either for themselves or for a new corporation which they or one of their number had organized, and that they are liable for any misappropriation of the trust property so disposed of, and may be compelled to account therefor; and in this connection it is further insisted that defendants did not properly account to plaintiffs for the proceeds of this sale as required by law, it being claimed that the property was of far greater value than the $80,000 for which it was sold.

The old company was not formally dissolved until at least March 16, 1920, the date of the last publication of the notice of the dissolution. Hence, at the time that the sale to Butler was made, the directors of the Douglas Mercantile Company neither were, nor did they possess the powers of, the statutory trustees upon dissolution (W. C. S. 1920, sec. 5441). They were acting pursuant to a vote of more than two-thirds of the stock of the company, whereby they were directed to "sell and dispose of the property of the company, real and personal, of every nature, for the best price obtainable." This was a step looking towards dissolution, in the course of which the corporation then was. It is conceded by counsel through the pleadings, that it is *res adjudicata* as regards the parties in this case, that under our law a two-thirds majority of stockholders had the absolute right to dissolve the company, regardless of its condition and whether solvent or not. Taking as established, then, the right of the majority stockholders in the case at bar to dispose of all the assets of the corporation, the question presents itself as to whether they may deal with another corporation in which they or some of their number are controlling factors, selling to it the assets of the old company.

The fact that in the case at bar the sale was made to Butler, one of the directors of the old company, and who shortly thereafter organized the company in which the stockholders, other than the plaintiffs, became interested, and to which the property was ultimately conveyed, would not seem to change the nature of the question. On that question the authorities, while not altogether in harmony, make it reasonably clear that the rule is as summed up by Judge Sanborn in the case of Wyman v. Bowman, 127 Fed. (C. C. A. 8th Circuit) 257, as follows:

"Contracts and transactions between individuals and corporations of which they are directors or officers, which are fair, which are made in good faith, which do not secure to the individuals any undue or unjust benefit or advantage, and in which the interest of the individuals and the duty of the officials work in unison for the welfare of the corporation, are valid and enforceable both at law and in equity. Twin Lick Oil Co. v. Marbury, 91 U. S. 587, 590, 23 L. Ed. 328; Hotel Co. v. Wade, 97 U. S. 13, 22, 23, 24 L. Ed. 917; Gould v. Railway Co. (C. C.) 52 Fed. 680, 681; Sutton Mfg. Co. v. Hutchinson, 63 Fed. 496, 11 C. C. A. 320; Holt v. Bennett, 146 Mass. 437 (16 N. E. 5); Smith v. Lansing, 22 N. Y. 520, 528; Duncomb v. N. Y. etc., R. Co., 88 N. Y. 1, 6, 9; Buell v. Buckingham & Co., 16 Iowa, 284, 291, 293 (85 Am. Dec. 516); Ashurst's Appeal, 60 Pa. 291, 312, 315; Hallam v. Indianola Hotel Co., 56 Iowa 178, 9 N. W. 111; Combination Trust Co. v. Weed (C. C.) 2 Fed. 24, 25-27; Gorder v. Plattsmouth Canning Co., 36 Neb. 548, 556, 54 N. W. 830."

This statement of law was also approved in a number of later cases in the Federal courts, which are mentioned in the case of Rhea v. Newton, 262 Fed. 345. The latter case also follows the same rule. And, to set the matter completely at rest, this court, in the case of Smith v. Stone, 21 Wyo. 62, at 85-86, 128 Pac. 612, 617 has taken a similar view, declaring, in the language of Mr. Justice Potter:

"The fact that two corporations are controlled by the same officers or stockholders does not prevent them from dealing with each other or the purchase by one of the prop-

erty of the other, unless the acts of the majority in control are fraudulent as against the corporation and complaining stockholders.   (Smith v. Chase & Baker Piano Mfg. Co. (197 Fed. 466).   'The courts will closely scrutinize a sale of corporate property effected by majority stockholders to another corporation, which they control or are interested in.   Such a sale is not void nor constructively fraudulent. But if it is unfair to the minority, or if any unconscionable advantage of their position has been taken by the majority, the courts will not hesitate, at the suit of the minority, to set the sale aside.   Regardless of the means employed, when it appears that 'the majority have put something in their pockets at the expense of the minority,' a court of equity will grant relief.' ''

With these rules of law in mind, we are led, necessarily, to consider whether the record shows fraud on the part of the officials in carrying out the sale questioned, as against plaintiffs, and whether such sale was unfair to them as minority stockholders, or whether any "unconscionable advantage" has been taken of them.   The principal complaint of the plaintiffs appears to be that the property was sold at less than it was worth.   In the case last mentioned, this court said:

"The fact alone that the selling price was less·than the value of the property, as alleged, cannot be held, we think, to authorize a legal presumption of fraud on the part of the majority stockholders and the trustees."

One who alleges fraud must so clearly and distinctly prove the same as to satisfy the mind and conscience of its existence.   Kahn v. Traders etc. Co., 4 Wyo. 419, 34 Pac. 1059.   The law will not impute fraud to any party, when the facts and circumstances out of which it is supposed to arise are consistent with honesty and purity of intention. Patterson v. Lee etc. Co., 7 Wyo. 401, 52 Pac. 1085.   A careful examination of the record makes it clear that the evidence was sharply conflicting as to those items of assets on which plaintiffs appear to rely to establish that the prop-

erty was disposed of for far less than its value. It is hardly necessary to cite authorities anent the rule of appellate practice that where testimony is conflicting, the finding of the trial court should not be disturbed, unless such finding is clearly erroneous or against the great weight of evidence. Jackson v. Mull, 6 Wyo. 55, 42 Pac. 603; Hecter v. Smith, 5 Wyo. 291, 40 Pac. 310; Columbia etc. Co. v. Duchess etc. Co., 13 Wyo. 244, 79 Pac. 385. We are not convinced that the finding of the trial court was either clearly erroneous or against the great weight of the evidence on these matters, especially when it appears that Mr. Butler's bid for the property was the only one submitted, although repeated efforts were made by the majority stockholders to secure other bids; that it was necessary in disposing of the property to either accept Mr. Butler's bid or submit to a forced sale; that in 1919, approximately a year before the sale was made, plaintiffs and majority stockholders all joined in a sale of one-fourth of their several stock-holding interests in the old company to Butler, and that the price he was required to pay was only $30 per share; that the company, during the year 1919, lost an appreciable source of income, and its profits were not as great as in preceding years; that collections were becoming steadily more difficult, and that nothing had arisen which would tend to cause an increase in the value of the property of the old company. Such being the situation, it is difficult, as we see it, to understand why $40 per share, paid in 1920 to the plaintiffs for their interests, was not a fair price. Indeed, Mr. Butler, plaintiffs' own witness, admittedly a man of broad experience in the mercantile business, testified in his deposition without objection that under his experience for forty years in the mercantile business along similar lines, the price paid by him for the business of the Douglas Mercantile Company was a reasonable price—it was a "top price."

Complaint is made of the action of the trial court in admitting irrelevant and incompetent evidence. A sufficient

answer to this is the rule already referred to by this court in the case of Yount v. Strickland, 17 Wyo. 526, at 533, 101 Pac. 942, 944 where it is said:

"While there would have been no error in excluding a large part of this evidence, the trial was to the court who was able to sift the wheat from the chaff; and we think the defendants were not prejudiced by its admission."

Stated in another way and in general terms, the great weight of authority seems to support the principle that where there is sufficient competent evidence to sustain a finding in a case tried by the court without a jury, admission of incompetent evidence is not ordinarily a ground for reversal. See Freeman v. Peterson, 45 Colo. 102, 100 Pac. 600; Pratt v. Davis, 224 Ill. 300, 79 N. E. 562, 7 L. R. A. (N. S.) 609, 8 Ann. Cas. 197; Griffith v. Anchor etc. Co., 143 Iowa 88, 120 N. W. 90; Sarbach v. Sarbach, 86 Kans. 894, 122 Pac. 1052; Palmer v. McFarlane, 78 Nebr. 788, 111 N. W. 794; Durand v. Preston, 26 S. D. 222, 128 N. W. 129; Arizona etc. Co. v. D. & R. G. R. R. Co., 16 N. M. 281, 117 Pac. 730; Chlopeck v. Chlopeck, 47 Wash. 256, 91 Pac. 966; Spafford v. McNally, 130 Wisc. 537, 110 N. W. 387.

In the same connection it is strenuously insisted that reversible error was committed by the court in admitting in evidence certain letters from Butler to the defendants, said letters having been written several years after the transaction involved in this suit was had. But previously the court had also admitted testimony of certain witnesses as to alleged statements made by Butler to them—also several years after the transaction in question was completed. We think that none of this testimony or evidence should have been received. It was obviously hearsay. In Peck v. Yorks, 47 Barber (N. Y.) 131, at 133, it is said:

"The referee erred in permitting the plaintiff to prove the declarations of the defendants who did not answer the complaint, and were not served with the summons in the action. Those declarations tended to establish the allegations of

fraud in the complaint, and were made when the defendant who defended the action was not present. They did not accompany acts, and were not *res gestae*. They were not offered to establish the complaint as against the defendants who were not served with the summons. But if they had been offered for that purpose they could not have been received; for those defendants were not brought into the case so that the judgment in it would bind them; and evidence against them was wholly irrelevant to the issues joined in the action.''

In Derby v. Rounds, 53 Cal. 659, the syllabus, which reflects accurately the decision, reads:

''Where a party has been named in a complaint as a party-defendant, but not served, his testimony as to the admissions of other defendants who have been served is hearsay and inadmissible.''

See also Griswold v. Burroughs, 15 N. Y. S. 314, 22 C. J. 348, sec. 400, and cases cited under note 27. While the principle which we have mentioned above—viz. where ignoring objectionable testimony there still remains sufficient evidence to support the trial court's finding and decree— would dispose of this point against the plaintiffs' contention, there is still another principle which leads to the same result. The letters of Butler to the defendants were received in evidence to dispute the statements of Butler to which the witnesses aforesaid testified. The improper admission of evidence to contradict evidence previously erroneously admitted is not a ground for reversal. See Budd v. Meriden etc. Co., 69 Conn. 272, 37 Atl. 683; Dryden v. Barnes, 101 Md. 346, 61 Atl. 342, Copenhaver v. Northern etc. Co., 42 Mont. 453, 113 Pac. 467; Earles v. Bigelow, 7 Wash. 581, 35 Pac. 390; Meigs v. Dexter, 172 Mass. 217, 52 N. E. 75, Treat v. Curtis, 124 Mass. 348; 4 C. J. 971 and cases cited. Neither can it be successfully urged that the testimony of the witnesses concerning Butler's statements to them was admissible for the purpose of impeaching the testimony given by him upon deposition as there he testified

that he did not remember making any statements such as those which the witnesses testified to upon the trial. This court, in Crago v. State, 28 Wyo. 215, 202 Pac. 1099, quoting with approval from the case of Champ v. Commonwealth, 2 Metc., (Ky.) 17, 25, 74 Am. Dec. 388 used the following language:

"Where the witness does not state any fact prejudicial to the party calling him, but only fails to prove facts supposed to be beneficial to the party, is not within the reason or policy of the rule, and the witness cannot be contradicted in such case by evidence that he had previously stated the same fact to others."

We have examined the authorities cited on behalf of appellants, and while some of them appear to present in some aspects the situation disclosed by the case at bar, their analysis will establish, we think, that there are distinguishing factors which required in those cases the adoption of different rules. For example the case of J. H. Lane etc. Co. v. Maple Cotton Mill, (C. C. A.) 232 Fed. 421, was one where the price bid for the property was concededly inadequate, and the sale was made by statutory trustees. In the case at bar, as we have pointed out, the testimony as to the adequacy of price was conflicting, and Butler, plaintiffs' own witness, testified it was a "top price;" also, the sale was made by directors of the company before dissolution had been completed. In Theis v. Spokane etc. Co., 34 Wash. 23, 74 Pac. 1004, it was admitted, in effect, that the proceeding was solely for the purpose of excluding objectionable stockholders, and not in good faith. In the case at bar, the testimony on these matters was in conflict, and the trial court, having before it the parties and their witnesses, was in a better position to determine the fact than an appellate court, which looks only at the printed record. Under such circumstances, we would not be disposed to interfere with the trial court's action, even though we might feel we should have reached a different conclusion.

A careful review of the record in this case, in the light of the legal principles which have been mentioned, has not led us to the conclusion that the case should be reversed and sent back for a new trial on account of serious error committed. It is apparent that the suit was not brought with promptness after plaintiffs were advised of the facts upon which they rely. This is true, though the suit was one in equity for an accounting, and the equitable rules governing such proceedings are well known. It results from what has been said, that, finding no reversible error in the record, the decree should be affirmed. It is proper to say that Mr. Justice Potter, who sat in the case, concurred in this conclusion before his death.

*Affirmed.*

BLUME, C. J., concurs.