Russell YORK, d/b/a York's Shop, Appellant (Plaintiff below),

v.

M. S. TORBERT, d/b/a M. S. Torbert & Sons, Appellee (Defendant below).

No. 2937.

Supreme Court of Wyoming.

Sept. 20, 1960.

Bruce P. Badley, Sheridan, for appellant.

Lonabaugh & Lonabaugh, E. E. Lonabaugh, Sheridan, for appellee.

Before BLUME, C. J., and PARKER and HARNSBERGER, JJ.

Mr. Chief Justice BLUME delivered the opinion of the court.

This is an action brought by Russell York, plaintiff and appellant herein, against M. S. Torbert, defendant and appellee herein, to recover a sum of money for the use of a Caterpillar tractor. Plaintiff alleged in his amended complaint that on July 10, 1958, plaintiff furnished to defendant a Caterpillar tractor, RD8, for use by the defendant on a crushing project for highway construction on the Big Horn Mountains near Bear Lodge on the Sheridan, Wyoming, Highway No. 14; that the Caterpillar tractor was furnished for a rental period of fifteen days from July 10, 1958, to July 24, 1958, for the agreed sum of $1,000; that said sum has not been paid; and that thereafter defendant retained said Caterpillar tractor until October 17, 1958, when defendant attempted to return the tractor in a deteriorated condition due to improper maintenance and lack of care by the defendant, which return was refused by the plaintiff. Plaintiff asked judgment for the sum of $4,575, the reasonable value of the use of the tractor.

Defendant answered, alleging that the Caterpillar tractor was rented by the defendant for the sum of $1,000 for an agreed seventeen working days and that defendant has offered to pay that sum which was refused. Defendant admitted that he retained the tractor until October 17, 1958, when his job on the Big Horn Mountains was completed, but alleged that said tractor was in an unusable condition when delivered; that defendant suffered delay and loss of time by the constant repairs necessary to keep said tractor going; and that the tractor was used approximately seventeen working days. He denied that when returned to plaintiff it was in a deteriorated condition due to improper maintenance and lack of care by the defendant.

After the trial of the case by the court without a jury, judgment was entered herein on July 23, 1959. The court found generally for the defendant except that the sum of $1,000 was due and judgment was rendered against the defendant for that sum without interest. The record shows that this sum has been paid and the judgment for that amount has been satisfied. The plaintiff and appellant has appealed to this court from the judgment in the court below. The parties will be mentioned herein as in the court below or as appellant and appellee.

■ 1. The claim of the plaintiff is based on his contention that the tractor above mentioned was rented to the defendant for $1,000 for the use by the latter for the period of fifteen continuous days; that defendant kept it until October 17, 1958; that the value of the use of the tractor was $6.15 per hour; and that, accordingly, the plaintiff is entitled to the amount prayed for in his complaint. That

claim is entirely controverted. The court did not accept that version and we must, according to the general rule, accept the testimony most favorable to the defendant for whom the court gave judgment. Counsel for appellant recognizes this rule but thinks that under the admitted facts in the case the plaintiff and appellant is entitled to recover.

The plaintiff was the owner of the tractor in question. It was old and a second-hand one, of the model of about 1933. Plaintiff had taken it in on a trade. He was not interested in renting it. He wanted to sell it, but the defendant wanted to rent it, not buy it. Plaintiff claimed, as above stated, that when it was rented it was for fifteen to seventeen continuous days but the testimony of the defendant was entirely to the contrary. He testified that he rented the tractor to accomplish a specific job; that the job for which he rented it would take from fifteen to seventeen working days—eight hours to the day; and that he did not rent the tractor for fifteen continuous days as plaintiff testified but for fifteen to seventeen working days—that is to say, for the time to finish the job which he had to do on the mountain; that he agreed to pay the plaintiff $1,000; that he got less than fifteen working days out of the tractor, mainly by reason of the fact that the tractor was out of repair a good deal of the time; and that in fact he got only about twelve and a half working days out of the tractor, namely about 100 hours. It may not be amiss to quote from some of the testimony of the defendant on cross-examination:

"Q. And, in your conversation with Mr. York, did you tell him that you would deduct breakdown time and bad weather time? A. In my conversation with Mr. York I told him—the agreement was that it would take from 15 to 17 days to do the job * * * working days.

*    *    *    *    *    *

"Q. So that you only used the terms and the words, 'I want to rent the Cat for 15 to 17 days,' isn't that right? A. No, I didn't do that.

*    *    *    *    *    *

"A. I said it would take from 15 to 17 working days to do the job.

*    *    *    *    *    *

"A. Because I had 17,000 ton to put out, and that would take—if I accomplished a thousand ton a day, it would take that many days to do it in.

"Q. That's what you told him * * about the tonnage and so forth? Did you tell Mr. York that? A. That's what I told him when I rented the Cat; and I would give him a $1,000.00 for the use of the Cat to do that job.

*    *    *    *    *    *

"Q. Well, did you tell him then that you would deduct for rain or so on? A. Yes, sir."

In that connection, we should consider another phase of the matter which would seem to corroborate the defendant's testimony. The plaintiff admitted that equipment for road work would at times break down. According to the testimony of the defendant the machine must operate in order to be entitled to any rental; if it is out of repair at any time that time is deducted; it is, as he stated, "docked". That testimony is corroborated by Mr. Clary, a witness called on behalf of the plaintiff. He testified that the fair rental value of a Caterpillar tractor is $6.15 per hour. He further testified:

"Q. Now, when you rent a Cat, it has to work, doesn't it? A. Yes.

"Q. It has to be in pretty fair condition? A. It has to run.

"Q. And you don't pay when it doesn't run, do you? A. No."

The witnesses varied in their testimony as to how many hours the tractor was actually in working condition. One witness testified it was from sixty to seventy hours. Defendant himself stated that he got about 100 hours of work out of the tractor. There is abundant testimony that the tractor was out of repair a good deal or most of the time. Figuring the hours the tractor was

in working condition as 100 hours, it is readily seen that the plaintiff got more than the rental value when he was paid the sum of $1,000 according to the agreement of the parties, and it can hardly be said that the defendant has been unjustly enriched as counsel for the plaintiff contends.

■ Counsel for appellant contends that about August 1, 1958, the defendant admitted that for the use of the tractor up to that time he owed the plaintiff $1,000 and that the court erred in allowing the plaintiff nothing for the use of the tractor from that time until it was returned on October 17, 1958. We are unable to gather from the record the same idea as counsel has, although the testimony is somewhat confusing. It is true that the defendant admitted at all times that he owed the plaintiff $1,000 but we are unable to find in the record that he admitted that he owed that sum for the use of the tractor *up to that time*, that is to say, August 1, 1958, and that, hence, as plaintiff claims, he owed additional rental for the use of the tractor after that time. Counsel for plaintiff asked the defendant why he didn't return the tractor to plaintiff at that time. The answer of the defendant was as follows:

"A. Well, sir, I had made an agreement with Mr. York that I would give him a $1,000.00 for the use of that Cat to do that job with, and I figured I owed him that $1,000.00. I had moved the Cat up there and I had started to work it and I agreed that I'd pay him a $1,000.00 to use that Cat to do that job with, and I figured I owed it to him. So I thought I would make the best of a bad bargain. I would try to use the Cat and get as much out of it as I could with my $1,000.00."

This shows, we think, that the trial court was justified in finding that the $1,000 was to be paid for the completion of the entire job and the evidence is clear that the job was not finished until October, 1958.

Counsel for plaintiff claims that the parties entered into a new contract on August 1, 1958, and that this again shows that the $1,000 was due for the use of the tractor up to that time. Defendant testified that the plaintiff at that time wanted him to buy the tractor but that he refused to buy it and they finally agreed that the defendant might sell it and that if he did so he could apply the $1,000 on the price for which it was sold. This is the only "new contract" that we can find in the record, and that hardly sustains the contention of the plaintiff as above mentioned. Defendant made every effort to sell the tractor but was unable to do so. Moreover, the testimony of the defendant further shows that thereafter plaintiff specifically told the defendant to keep the tractor in his possession for the purpose of selling it (QQ. 379, 383). So it appears that the trial court was entitled to find that the defendant kept the tractor until it was finally redelivered to the plaintiff (1) because the job was not finished and (2) because it was retained by special permission of the plaintiff. We are unable to find the trial court was bound to find any additional rental due to the plaintiff as contended by the plaintiff.

■ 2. The defendant was permitted to introduce testimony that during the time that he had the tractor in question in his possession he expended quite a lot of money on repairs of the tractor. Counsel for plaintiff objected to the testimony because it was not in issue in the case and because it was wholly immaterial and irrelevant. Counsel assigns the ruling of the court on that matter as error. Defendant at no time during the trial claimed, and he does not at this time claim, that he is entitled to payment from the plaintiff for any such amount expended by him. Counsel for defendant state that such evidence was admissible to show that the defendant was not unjustly enriched and further to show that a great deal of care was given to the tractor. In this connection it should be mentioned that the plaintiff pleaded that the tractor was returned in a deteriorated condition due to the improper maintenance and lack of care on the part of the defendant. In view of that fact, it is not clear that the admission

of the testimony above mentioned was wholly irrelevant. It had some tendency to show that defendant took good care of the tractor and perhaps also that defendant's work was continuously interrupted in the use of the tractor by reason of its poor condition so as to justify its retention until the job was completed. In any event there was sufficient competent evidence without that which is claimed to have been erroneously admitted to sustain the judgment herein. We stated in Williams v. Yocum, 37 Wyo. 432, 263 P. 607, 611, as follows:

> "Stated in another way and in general terms, the great weight of authority seems to support the principle that, where there is sufficient competent evidence to sustain a finding in a case tried by the court without a jury, admission of incompetent evidence is not ordinarily a ground for reversal. * * *"

To the same effect is Russell v. Curran, 66 Wyo. 173, 206 P.2d 1159. See also 89 C.J. S. Trial § 589; 3 Am.Jur. Appeal and Error § 940, p. 505. We think that we would not be justified to reverse the case on account of the claimed error, if error it was. The judgment is, accordingly, affirmed.

Affirmed.